U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR 11 2020
AT____O'CLOCK____
John M. Domurad, Clerk - Syracuse

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No.   5:20-CR-84 (TJM) |
| | ) |
| v. | ) **Indictment** |
| | ) |
| MICHAEL BARTUSEK, | ) Violations:   18 U.S.C. § 1343 |
| | ) [Wire Fraud] |
| Defendant. | ) 18 U.S.C. § 1957 |
| | ) [Transactions in Criminally |
| | ) Derived Property] |
| | ) |
| | ) |
| | ) 11 Counts & Forfeiture Allegations |
| | ) |
| | ) County of Offense:   Oneida |

## THE GRAND JURY CHARGES:

1.      At all times relevant to this indictment, "Company-1" was a Delaware corporation with its principal place of business located in New Hartford, New York.

2.      From in or about July 2015 through in or about March 2016, defendant **MICHAEL BARTUSEK** was Company-1's Chief Financial Officer. His duties included leading and managing Company-1's finance and accounting teams, including preparation of financial reporting and advising Company-1 on financial planning and management.

### BARTUSEK'S SCHEME TO DEFRAUD COMPANY-1

3.      **BARTUSEK** devised and intended to devise a scheme to defraud Company-1 of approximately $776,000 and to use that money for personal expenses and to make a high risk investment in African diamonds. **BARTUSEK** hoped to make sufficient money on the African diamond investment to repay Company-1 before Company-1 realized that **BARTUSEK** had fraudulently diverted its funds. **BARTUSEK** planned to conceal his misuse of Company-1's funds and to keep what he anticipated would be profit from the diamond transaction.

## Manner and Means

4. Starting in or about late August and September 2015, **BARTUSEK** asked Company-1 employees about Company-1's cash holdings and expressed an interest in using Company-1's cash holdings to make short-term, safe investments on Company-1's behalf. In fact, **BARTUSEK** intended to use those holdings to invest in a risky investment in African diamonds and to pay for his personal expenses.

5. **BARTUSEK** thereafter used, directed, and enabled the use of Company-1's money as follows:

   a. On or about November 2, 2015, **BARTUSEK** caused a wire transfer of $84,475 of Company-1's funds to **BARTUSEK's** jointly-held Citizens Bank account ending in 4665. That same day, **BARTUSEK** caused Citizens Bank to issue a bank check in the amount of $79,452.28 payable to Canandaigua National Bank to reinstate the mortgage on **BARTUSEK's** personal residence.

   b. On or about November 6, 2015, **BARTUSEK** caused a wire transfer of $14,500 of Company-1's funds to a Wells Fargo account ending in 6079 held by a person with the initials D.B. That transfer was not related to Company-1's interests and instead was used to pay off one of **BARTUSEK's** personal obligations.

   c. In or about the fall of 2015, **BARTUSEK** and a person with the initials J.W. directed approximately $270,000 of Company-1's funds to finance potential purchases of African diamonds.

6. **BARTUSEK** sent false and misleading communications to other Company-1 employees to further and conceal his scheme to divert and misuse Company-1's assets, including:

2

a. On or about September 22, 2015, **BARTUSEK** sent an email message to Company-1's Chief Accounting Officer / Controller asserting that Company-1 had an opportunity to pool assets "with other investors with" a legitimate financial services firm, and **BARTUSEK** told the Chief Accounting Officer / Controller, "I would like to put $250k into account of Canada – 10 day requirement/matures – these ST instruments can yield 20-50% a turn – they are not always avail[able.]" As **BARTUSEK** then well knew, there was no opportunity to pool assets with other investors through a legitimate financial services firm and both the availability of the investment that he described and the proposed return on that investment were fabricated.

b. On or about October 14, 2015, **BARTUSEK** sent electronic messages over Company-1's internal messaging system to a Company-1 employee saying that: (a) he wanted to use Company-1's cash to "open another position"; (b) the "first position closes on Friday so that one will come back early next week – I want to keep rolling positions every 2 weeks. Thanks $178,000"; (c) "since the first position is clearing – I need the banking info for the distribution to come back to [Company-1]. So it will essentially be a wire back for the distribution"; and (d) "the first position is going to yield about 40+% and will be distributed back to principals by Monday – so we can just get the rhythm down every 2-3 weeks we can do great[.]" As **BARTUSEK** then well knew, he was not using Company-1's money to open a new position, the "first position" was not "closing," and the "first position" was not going to yield 40+% for Company-1 or be distributed back to Company-1 by the following Monday.

c. On or about October 30, 2015, **BARTUSEK** sent a communication to a Company-1 employee asserting that Company-1 would be "splitting a position with Fidelity[.]" As **BARTUSEK** then well knew, Company-1 was not and would not be splitting a position with Fidelity.

3

7. On or about January 26, 2016, **BARTUSEK** created two false account statements purportedly from a legitimate financial services firm. **BARTUSEK** created these false account statements to deceive Company-1 regarding the status of funds that **BARTUSEK** had caused to be transferred, supposedly to finance safe, short-term investments. One of these false account statements purported to describe the status of Company-1's money at year-end 2015 (the "2015 False Account Statement"), and the other purported to describe the status of Company-1's money in the early part of 2016 (the "2016 False Account Statement").

8. On or about January 26, 2016, **BARTUSEK** drafted and sent to two Company-1 employees an email message that made it appear as if **BARTUSEK** had received the 2015 False Account Statement from J.W. As **BARTUSEK** then well knew, he himself had drafted both the 2015 False Account Statement and the email message making it appear as if J.W. had sent the 2015 False Account Statement to him when, in fact and as **BARTUSEK** then well knew, J.W. had not sent the 2015 False Account Statement to **BARTUSEK**.

9. On or about January 27, 2016, **BARTUSEK** sent the 2016 False Account Statement to a Company-1 employee, making it appear as if **BARTUSEK** had received the 2016 False Account Statement from J.W. when, as **BARTUSEK** then well knew, he had fraudulently fabricated the 2016 False Account Statement.

10. On or about January 27, 2016, **BARTUSEK** sent an email message to a senior Company-1 employee stating that "[y]esterday we received 12/31 statement and our account was closed – we should get a confirmation to for distributions back into [Company-1]." As **BARTUSEK** then well knew, he created the purported 2015 False Account Statement, the "account" was not closed because it never existed, and any distribution back to Company-1 would have to come from closing one or more diamond transactions.

4

Case 5:23-cr-00034-CLM Document 12 Filed 03/10/23 Page 5 of 8

11. On or about January 30, 2016, **BARTUSEK** drafted proposed language for J.W. to use in an email message to a senior Company-1 employee, and **BARTUSEK** sent that proposed language to J.W. On or about the same day, J.W. used the language proposed by **BARTUSEK** in an email to a senior Company-1 employee, stating that "[b]ecause all the assets are sold our buyer can initiate a single wire back to [a] Trust account in US and then to [Company-1] which will be Monday." As **BARTUSEK** then well knew, all of Company-1's assets had not been sold because **BARTUSEK** had dissipated some of the assets to pay himself or satisfy personal obligations and a wire could not be initiated back to Company-1.

12. On or about July 11, 2016, and July 12, 2016, **BARTUSEK** received wire transfers in the amount of $12,000 representing a portion of his share of the proceeds from a sale of a parcel of diamonds purchased with Company-1's money. Company-1 did not receive any of the proceeds from the sale of a parcel of diamonds purchased with its money.

## COUNTS 1-7
## Wire Fraud – 18 U.S.C. § 1343

13. The allegations set out in paragraphs 1-12 are hereby re-alleged and incorporated by reference as if fully set forth herein.

14. From in or about August 2015 to in or about July 2016, in the Northern District of New York and elsewhere, defendant **MICHAEL BARTUSEK** devised and intended to devise a scheme and artifice to defraud Company-1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

15. For the purpose of executing such scheme and artifice, defendant **BARTUSEK**, on or about the dates listed below, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce the following signs, signals, and sounds, that is, wire transfers of funds, each transmission constituting a separate count:

5

| Count | Date | Amount of Wire Transfer | Originating Bank and Location | Terminating Bank and Location |
|---|---|---|---|---|
| 1 | 9/25/15 | $101,000 | JPMorgan Chase Bank, N.A. (England) | Compass Bank (Alabama) |
| 2 | 10/1/15 | $149,000 | JPMorgan Chase Bank, N.A. (New York) | Well Fargo Bank, N.A. (Alabama) |
| 3 | 10/7/15 | $13,000 | JPMorgan Chase Bank, N.A. (New York) | Well Fargo Bank, N.A. (Alabama) |
| 4 | 10/15/15 | $178,000 | JPMorgan Chase Bank, N.A. (New York) | Well Fargo Bank, N.A. (Alabama) |
| 5 | 10/22/15 | $65,000 | JPMorgan Chase Bank, N.A. (New York) | Well Fargo Bank, N.A. (Alabama) |
| 6 | 10/30/15 | $85,000 | JPMorgan Chase Bank, N.A. (New York) | Well Fargo Bank, N.A. (Alabama) |
| 7 | 11/6/15 | $185,000 | JPMorgan Chase Bank, N.A. (New York) | Well Fargo Bank, N.A. (Alabama) |

All in violation of 18 U.S.C. § 1343.

### COUNTS 8-11
### Transactions in Criminally Derived Property – 18 U.S.C. § 1957
### [Defendant MICHAEL BARTUSEK]

16. The allegations set out in paragraphs 1-15 are hereby re-alleged and incorporated by reference as if fully set forth herein.

17. On or about the dates set forth below, in the Northern District of New York and elsewhere, defendant **MICHAEL BARTUSEK**, in the United States, willfully caused others to engage in the monetary transactions, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, as described below, which property was derived from specified unlawful activity, specifically, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Date | Monetary Transaction |
|---|---|---|
| 8 | 11/2/15 | Wire transfer of $84,475 from an account held by a law firm in Alabama to **BARTUSEK's** jointly held Citizens Bank account ending in 4665. |
| 9 | 11/2/15 | Transfer of $79,452.28 by check number 513346405-6 made payable to Canandaigua National Bank and funded from **BARTUSEK's** jointly held Citizens Bank account ending in 4665. |

6

| 10 | 11/6/15 | Transfer of $14,500 from an account held by a law firm in Alabama to a Wells Fargo bank account ending in 6079 held by an individual with the initials D.B. |
| 11 | 7/8/16 | Wire transfer of $15,000 from J.W.'s Citibank Account ending in 8380 to a Wells Fargo account ending in 6079 held by an individual with the initials D.B. |

All in violation of 18 U.S.C. § 1957(a) and § 2(b).

## FORFEITURE ALLEGATIONS

### FIRST FORFEITURE ALLEGATION

As a result of committing the offenses alleged in Counts 1-7 which are re-alleged and incorporated by reference as if fully set forth here, defendant **BARTUSEK** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all right, title and interest in any property, real or personal, relative to the offenses of conviction, which constitutes or is derived from proceeds directly or indirectly traceable to a violation of 18 U.S.C. § 1343 (wire fraud).

The intent of the United States of America to forfeit such property includes, but is not limited to: a money judgment in the amount of $101,000 (Count 1); $149,000 (Count 2); $13,000 (Count 3); $178,000 (Count 4); $65,000 (Count 5); $85,000 (Count 6); and $185,000 (Count 7).

### SECOND FORFEITURE ALLEGATION

As a result of committing the offenses alleged in Counts 8-11, which are re-alleged and incorporated by reference as if fully set forth here, defendant **BARTUSEK** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all right, title and interest in any property, real or personal, involved in the knowing commission of the offenses of conviction, which constitutes or

7

is derived from proceeds directly or indirectly traceable to a violation of 18 U.S.C. § 1957 (transactions in criminally derived property).

The intent of the United States of America to forfeit such property includes, but is not limited to: a money judgment in the amount of: $84,475 (Count 8); $79,452.28 (Count 9); $14,500 (Count 10); and $15,000 (Count 11).

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Title 28 United States Code, Section 2461(c).

Dated: March 11, 2020

A TRUE BILL, **NAME REDACTED

Grand Jury Foreperson

GRANT C. JAQUITH
United States Attorney

By: _____
Michael D. Gadarian
Assistant United States Attorney
Bar Roll No. 517198
Nicolas Commandeur
Assistant United States Attorney
Bar Roll No. 518984